**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**NOLAN WILLIAMS,**

      **Petitioner,**

      **v.**

**WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,**

      **Respondent.**

**CASE NO. 2:13-CV-1002
JUDGE MICHAEL H. WATSON
Magistrate Judge Elizabeth P. Deavers**

**REPORT AND RECOMMENDATION**

      Petitioner, a state prisoner, has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant *Petition,* Respondent's *Return of Writ*, Petitioner's *Traverse* and *Notice of Supplemental Authority*, Respondent's *Reply*, Petitioner's *Response,* and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the Petition be **DENIED** and this action be **DISMISSED.**

**Facts and Procedural History**

      This case involves Petitioner's convictions after a bench trial in the Lucas County Court of Common Pleas on felonious assault arising out of an October 10, 2010, altercation with his wife, Joanna Williams. The trial court imposed a sentence of eight years in prison. Petitioner timely appealed to the Ohio Sixth District Court of Appeals, which has summarized the facts of this case as follows:

> Appellant and Mrs. Williams resided at 2212 Walnut, Toledo, Ohio. The record is clear that the altercation between them on October 8, 2010, began in the house on Walnut. At some point in the altercation, Mrs. Williams ran from the house and outside to the street. Appellant followed.
>
> Appellant argues that he did not strike Mrs. Williams when they were outside of the house and that there was no ongoing

emergency when the neighbor (who was outside) called 911. Appellant argues that the purpose of the 911 call was to establish past events and that the neighbor was not describing events as they happened.

The state responds that the neighbor was clearly reporting an on-going emergency involving domestic violence and made the call to secure emergency police assistance.  The 911 call proceeded as follows:

Operator: Toledo 911. (yelling in background)

Caller: Can I have the police at 2216 Walnut St.? This man is beating this lady up real good * * *

Operator: 2216 Walnut?

Caller: Yes

Operator: Does she need medical attention?

Caller: Yes, she does.

Operator: What is your name?

Caller: My name is Fonda, I stay next door. (Yells out: I'm calling the police right now.)

Operator: Any weapons that you can tell? (yelling in background)

Caller: He's just beating her . . .

Operator: Can you give me a description of him, white, black or hispanic?

Caller: Black* * *

Operator: What's he wearing?

Caller: He's got on jeans and a shirt, they stay next door to me * * * (yelling in the background)

Operator: OK police are on notified * * * I'm gonna transfer you over to medical (more yelling in background)

Appellant admitted at trial that he chased Mrs. Williams into the street and that his objective was to bring her back to the house. Appellant restrained Mrs. Williams outside as she was trying to get away. Appellant testified that after he stopped her, he punched Mrs. Williams in the knees from behind to make her legs buckle. He testified he did this to permit him to push her back to the porch. Appellant testified that Mrs. Williams was screaming with her voice at a level of 7, 8, or 9 on a scale of 1 to 10 while outside.

Appellant testified that it was nice out and everyone, including the neighbor, was outside. Appellant testified that he was aware that a neighbor was calling 911. According to appellant, the woman who called 911 was "hollering and screaming and she was louder than Joanna."

*State v. Williams*, 987 N.E. 2d 322, 326-27 (Ohio App. 6th Dist. 2013). Petitioner raised the

following assignments of error:

I. The trial court deprived Mr. Williams of a fair trial when it erroneously admitted the 911 hearsay call in violation of Mr. Williams' due process and confrontation rights.

II. The trial court violated Mr. Williams' state and federal due process rights to a fair trial when it admitted improper and prejudicial other bad acts evidence in contravention of Evid.R. 404(B).

III. There is insufficient evidence to sustain Mr. Williams' conviction.

IV. The trial court violated Mr. Williams' due process right to a fair trial when it failed to consider the lesser offense of aggravated assault because he provided the mitigating circumstances of provocation and sudden passion.

V. The trial court failed to make an explicit finding on the record, regarding Mr. Williams' present and future ability to pay appointed counsel's fees, and failed to notify Mr. Williams on the record and in open court that it was imposing appointed counsel's fees, supervision costs, and confinement costs as set forth in its March 30, 2011 judgment entry.

3

*Id.* at 325.  On March 1, 2013, the appellate court affirmed Petitioner's judgment of conviction, and sentence except to the extent that the sentence imposed an obligation to pay costs of appointed attorney counsel, costs of confinement, and costs of supervision. The appellate court reversed the judgment on those requirements and remanded the case for resentencing, ordering the State to pay the costs of the appeal.  *Id.* at 332-33.  On June 5, 2013, the Ohio Supreme Court dismissed Petitioner's appeal.  *State v. Williams*, 135 Ohio St. 3d 1461 (Ohio 2013).

On October 10, 2013, Petitioner filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He asserts that he was denied due process, the right to a fair trial and convicted in violation of the Confrontation Clause due to admission of the contents of a 911 report and that the appellate court abused its discretion by denying this claim (claims one and two); he was denied a fair trial and convicted in violation of state law due to admission of other bad acts (claim three); and that the trial court unconstitutionally imposed sentence (claim four).  Petitioner asserts that he is innocent of the charge against him.  *Reply*, ECF 11, PageID# 717-18.  It is the position of the Respondent that none of Petitioner's claims warrant relief.

**Standard of Review**

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable

4

determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has explained the circumspect nature of a federal habeas court's review:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan,* 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

*Renico v. Lett*, 599 U.S.766, 773 (2010) (footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the holdings, as opposed to the dicta, of this Court's" cases. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one. *Renico v. Lett*, 559 U.S. 766 (2010).

5

*Wong v. Smith*, 131 S.Ct. 10 (Mem), 2010 WL 752363, at *2 (Nov. 1, 2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 592 U.S. 86, ——, 131 S.Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**Claims One and Two**

In claim one, Petitioner asserts that he was convicted in violation of the Confrontation Clause and denied his right to cross examination witnesses against him because the prosecution failed to establish the unavailability of his neighbor, "Fonda," the key witness against him, prior to admitting her statements in the 911 call into evidence. Petitioner complains that the prosecutor failed to call Fonda as a prosecution witness in an effort to obtain a tactical advantage. *Petition*, ECF 3, PageID# 33. He argues in claim two that the Ohio courts improperly rejected this claim and failed to conduct a review on the alleged denial of due process, thereby permitting this Court to conduct a *de novo* review. PageID# 36. Petitioner argues that Fonda would have provided exculpatory evidence. He asserts that admission of the contents of the 911 call violated state law. He argues that he is the victim of a manifest miscarriage of justice. *See Reply*, ECF 11.

The state appellate court rejected this claim in relevant part as follows:

> [A]ppellant contends that he was denied his right to confront witnesses against him at trial as guaranteed by the Sixth Amendment of the United States Constitution, Article I, Section 10 of the Ohio Constitution, and due process of law by the trial court's admitting into evidence the contents of a 911 call at trial. A neighbor made the 911 call, but did not testify at trial.
>
> The United States Supreme Court considered the Sixth Amendment right to confront witnesses in the context of 911 calls in *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165

L.Ed.2d 224 (2006). The court considered "when statements made during a 911 call * * * are 'testimonial' and thus subject to the requirements of the Sixth Amendment's Confrontation Clause." *Id*. at 817, 126 S.Ct. 2266, 165 L.Ed.2d 224.

In *State v. Jones*, 2012-Ohio-5677, 984 N.E.2d 948, the Ohio Supreme Court reviewed decisions of the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), *Davis,* and *Hammon v. Indiana* (consolidated with *Davis* ) and the analysis required to determine whether statements during police interrogation are testimonial and subject to the requirements of the Confrontation Clause. The court identified a primary-purpose test used to make that determination. *Jones* at ¶ 145. The test provides:

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Id.*, quoting *Davis,* 547 U.S. at 822, 126 S.Ct. 2266, 165 L.Ed.2d 224.

Appellant and Mrs. Williams resided at 2212 Walnut, Toledo, Ohio. The record is clear that the altercation between them on October 8, 2010, began in the house on Walnut. At some point in the altercation, Mrs. Williams ran from the house and outside to the street. Appellant followed.

Appellant argues that he did not strike Mrs. Williams when they were outside of the house and that there was no ongoing emergency when the neighbor (who was outside) called 911. Appellant argues that the purpose of the 911 call was to establish past events and that the neighbor was not describing events as they happened.

The state responds that the neighbor was clearly reporting an on-going emergency involving domestic violence and made the call to secure emergency police assistance. The 911 call proceeded as follows:

Operator: Toledo 911. (yelling in background)

7

Caller: Can I have the police at 2216 Walnut St.? This man is beating this lady up real good * * *

Operator: 2216 Walnut?

Caller: Yes

Operator: Does she need medical attention?

Caller: Yes, she does.

Operator: What is your name?

Caller: My name is Fonda, I stay next door. (Yells out: I'm calling the police right now.)

Operator: Any weapons that you can tell? (yelling in background)

Caller: He's just beating her ...

Operator: Can you give me a description of him, white, black or hispanic?

Caller: Black* * *

Operator: What's he wearing?

Caller: He's got on jeans and a shirt, they stay next door to me * * * (yelling in the background)

Operator: OK police are on notified * * * I'm gonna transfer you over to medical (more yelling in background)

Appellant admitted at trial that he chased Mrs. Williams into the street and that his objective was to bring her back to the house. Appellant restrained Mrs. Williams outside as she was trying to get away. Appellant testified that after he stopped her, he punched Mrs. Williams in the knees from behind to make her legs buckle. He testified he did this to permit him to push her back to the porch. Appellant testified that Mrs. Williams was screaming with her voice at a level of 7, 8, or 9 on a scale of 1 to 10 while outside.

Appellant testified that it was nice out and everyone, including the neighbor, was outside. Appellant testified that he was aware that a neighbor was calling 911. According to appellant, the woman who

8

called 911 was "hollering and screaming and she was louder than Joanna."

In our view, the audio recording of the 911 call discloses that the woman caller was excited by events. There was contemporaneous yelling in the background during the call. The neighbor described the incident as ongoing.

The evidence at trial was that Mrs. Williams was yelling for help and remained in the grasp of appellant at the time of the call. Both Mrs. Williams and the neighbor caller were yelling at the time of the call. This was not a call to report a historical event.

Viewed objectively, the primary purpose of the statements by the neighbor in the 911 call was to seek police assistance to aid Mrs. Williams in an ongoing emergency involving domestic violence. We conclude that statements in the 911 call were nontestimonial and, therefore, not subject to the requirements of the Sixth Amendment's Confrontation Clause.

***

With regard to appellant's argument that statements in the 911 call were inadmissible hearsay, we agree with the state that the trial court did not abuse its discretion in admitting audio recording and printed transcript of the 911 call under the hearsay exception for excited utterances under Evid.R. 803(2). . . .

In *State v. Duncan* (1978), 53 Ohio St.2d 215, 7 O.O.3d 380, 373 N.E.2d 1234, the Ohio Supreme Court established a four-part test to determine whether a hearsay statement is admissible under Evid.R. 803(2). *Id.* at paragraph one of the syllabus, approving and following *Potter v. Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140, paragraph two of the syllabus. Under this test, the proponent of the statement must establish that (1) there was an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have had an opportunity to personally observe the startling event. *Id.*

We review a trial court's admission of a statement as an excited utterance under Evid. R. 803(2) under an abuse of discretion standard. *Duncan* at 219, 373 N.E.2d 1234.

> The audio recording and testimony at trial demonstrates that the neighbor witnessed appellant struggling with his wife outside and forcing her back to the house against her will. Appellant testified to both his wife and the caller being excited and yelling as the events transpired. The audio recording discloses nervous excitement by the caller. The call concerned the altercation between appellant and his wife outside which admittedly was in view of the caller. We find no abuse of discretion on hearsay grounds to the trial court's admission of the 911 call into evidence as the statements in the call come within the exception for excited utterances under Evid.R. 803(2).
>
> We find Appellant's Assignment of Error . . . not well-taken.

*State v. Williams*, 987 N.E. 2d at 326-29.

Petitioner's claim that admission of the contents of the 911 tape violated State law or evidentiary rules fails to provide a basis for relief. Federal courts can grant habeas corpus relief only if the petitioner is confined in violation of the United States Constitution. 28 U.S.C. § 2254(a); *e.g., Wilson v. Corcoran*, 562 U.S. 1 (2010). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). As applied here, this Court cannot reexamine whether the Ohio courts were correct in their determination that admission of the contents of the 911 tape did not violate Ohio law.

Petitioner also raises a federal constitutional claim related to his right to confront witnesses. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970). In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court abrogated its holding in *Ohio v. Roberts*, 448 U.S. 56 (1980), and re-defined the test for determining whether admission of hearsay statements violates

the Confrontation Clause.  The Supreme Court in *Crawford* held that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity to cross examine the witness.  Under *Crawford*, "[w]here testimonial evidence is at issue . . .  the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination."  *Id*. at 1366. The Supreme Court, however, left the application of *Roberts* to cases involving nontestimonial hearsay untouched:

> ["Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts*, and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. As the courts applying *Crawford* have observed,
>
>> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements. . . .
>>
>> [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*Coy v. Renico*, 414 F.Supp.2d 744, 773 (E.D. Mich 2006) (quoting *United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005)); *Horton v. Allen*, 370 F.3d 75, 83–84 (1st Cir. 2004). The Supreme Court declined to define a comprehensive definition of the term "testimonial," but indicated, at a minimum, the term includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.  These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford*, 541 U.S. at 68. A casual remark to an acquaintance, business records, and statements made in

furtherance of a conspiracy do not constitute testimonial statements within the protection of the Sixth Amendment. *Id*. at 51–55. In the Sixth Circuit, the test for determining whether a statement is deemed testimonial within the meaning of *Crawford* is:

> . . . whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

*United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).

"[A]dmission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. . . . [T]he statement must be used as hearsay-in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005). In *Davis v. Washington,* 547 U.S. 813, 822 (2006), the Supreme Court clarified the circumstances under which a statement may be deemed to be testimonial and subject to the strictures of the Confrontation Clause, holding as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id*. In contrast, in *Hammon v. Indiana*, 547 U.S. 813 (2006), a companion case, the Supreme Court held that statements given to police responding to a domestic violence dispute constituted testimonial statements within the meaning of *Crawford* where police interviewed the victim after the event regarding the investigation into potentially criminal past events. The Supreme Court distinguished *Hammon* from *Davis*. *Davis* involved statements made that were needed to obtain

assistance in regard to an ongoing emergency. In *Hammon*, however, "[t]he officer . . . "was not seeking to determine . . . 'what is happening,' but rather 'what happened.'" *Michigan v. Bryant,* 562 U.S. 344, --, 131 S.Ct. 1143, 1154-55 (2011)(quoting *Davis*). The statements in *Hammon*, "'were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation.'" *Michigan v. Bryant*, 131 S.Ct. at 1154-55 (quoting *Davis,* 547 U.S. at 832)).

In *Michigan v. Bryant*, the Supreme Court clarified its holding in *Davis* and *Hammon,* holding that, in order to determine whether the Confrontation Clause bars admission of a statement at trial, the reviewing court must consider the "primary purpose" of the interrogation "by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs." *Michigan v. Bryant*, 131 S.Ct. at 1162.

> The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation. As the context of this case brings into sharp relief, the existence and duration of an emergency depend on the type and scope of danger posed to the victim, the police, and the public.

Applying these concepts to the factual scenario involved in this case, this Court concludes that the Confrontation Clause does not bar admission of Fonda's 911 statements. More specifically, the Court concludes that the state court's decision also so concluding did not unreasonably apply or contravene federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner remained free to call the witness to elicit any inconsistency in her statements or exculpatory evidence that he alleges she could provide. This Court reaches the same conclusion.

The decision cited by Petitioner of the United States Court of appeals for the Sixth Circuit of *McCarley v. Kelly,* 759 F.3d 535 (6th Cir. 2014), does not compel a different result. (*See Petitioner's Notice of Additional Authority*, ECF 16). *McCarley* involved the admission of statements of a 3 ½ year old child during therapy to a psychologist hired for the purpose of obtaining potentially incriminating information on charges of aggravated murder. The Sixth Circuit in *McCarley* reversed the decision of the District Court concluding that any error in the admission of the child's statements constituted harmless error. The Court reasoned that the statements involved testimonial evidence under the Confrontation Clause, and that the error was not harmless. The Sixth Circuit considered the facts in *McCarley* to be analogous to those in *Davis.*

> Lt. Karabatsos testified that he sought out Dr. Lord to speak with D.P. because "we determined it was necessary to bring somebody who was a child psychologist, possibly, or somebody who was a child therapist in to speak with him, see if they could extract any information from him that he remembered from that evening." The lieutenant also testified that he asked Dr. Lord to "make [him] aware" of anything D.P. said about the murder "so that [he] could use it in [his] investigation." Because Dr. Lord was questioning D.P. about the night of his mother's murder and reporting everything D.P. said that might be relevant to the investigation back to Lt. Karabatsos, Dr. Lord was acting more as a police interrogator than a child psychologist engaged in private counseling. *Cf. Brewer v. Williams*, 430 U.S. 387, 399, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (holding a police officer violated Williams' Sixth Amendment right to counsel by "deliberately and designedly set[ting] out to elicit information from Williams just as surely as—and perhaps more effectively than—if he had formally interrogated him"); *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (holding police violated Massiah's Sixth Amendment right to counsel when they "deliberately elicited" incriminating statements from him). Although Dr. Lord is not a member of the police department, Lt. Karabatsos' testimony shows that, like the 911 operator in *Davis,* Dr. Lord was "at least [an] agent[ ] of law enforcement" such that her acts could likewise be considered "acts of the police." *Davis,* 547 U.S. at 823 n. 2, 126 S.Ct. 2266. Dr. Lord's sessions with

D.P. thus were more akin to police interrogations than private counseling sessions, a fact that brings this case within the *Crawford–Davis* analysis for determining whether statements given to law enforcement personnel are testimonial evidence.

. . . D.P.'s statements to Dr. Lord occurred long after—ten days, to be precise—any emergency situation had passed. *See id.* at 830, 126 S.Ct. 2266. The lieutenant unambiguously stated that his "main concern" and the "main reason" for D.P.'s sessions with Dr. Lord "was to try to get the information" that police personnel could not elicit from D.P.—including the identity of the suspects— so that Lt. Karabatsos "could use it in [his] investigation." Because "the primary purpose of the interrogation [wa]s to establish or prove past events potentially relevant to later criminal prosecution," D.P.'s statements are testimonial evidence. Davis, 547 U.S. at 822, 126 S.Ct. 2266.

*McCarley v. Kelly*, 759 F.3d at 546.  Thus, *McCarley* provides no assistance to Petitioner here.

Claims one and two are without merit.

## Claim Three

In claim three, Petitioner complains that introduction of exhibits and testimony concerning applications for protective orders by his wife, or prior bad acts, denied him a fair trial.   Again, Petitioner's claim involves the admission of evidence by the state court.  He again contends that admission of this evidence violated state law or evidentiary rules.   These arguments, however, fail to provide a basis for relief in this Court.  Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990).  Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime

charged. *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980). For the reasons addressed by the state appellate court, such were the circumstances here.

The record reflects that

> Mrs. Johnson secured the issuance of two civil protective orders against appellant from the Domestic Relations Division of the Lucas County Court of Common Pleas. One was based upon an incident that occurred on July 4, 2010. The other was based on the October 8, 2010 incident involved in this case.
>
> The first protection order was issued on July 9, 2010, and dismissed, by agreement, on September 17, 2010. The September 17, 2010 dismissal order was state's exhibit No. 6 at trial. The second civil protective order was issued on January 13, 2011, after a hearing. A copy of the order was state's exhibit No. 7. Both exhibits were placed in evidence at trial.

*State v. Williams*, 987 N.E. 2d at 329. The appellate court noted that Petitioner had failed to object at trial and therefore conducted a plain error review, also stating:

> Ohio recognizes a presumption with respect to a trial court's consideration of evidence at bench trials:
>
> [T]he trial court is presumed to consider "'only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.' " *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987), quoting *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968). *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 195.

*Id*.

Assuming that Petitioner's claim is properly before this Court, he has failed to establish an error of constitutional magnitude.

> Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. See Estelle, 502 U.S. at 69–70; *Dowling v. United States*, 493 U.S. 342, 353–54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439–40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam)

(unpublished); *Manning v. Rose*, 507 F.2d 889, 893–95 (6th Cir. 1974).

*Norris v. Davis,* No. 05-60126, 2006 WL 1581410 (E.D. Mich. May 3, 2006).

> There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id*. at 75 n. 5, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385. Moreover, in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served. *Id*. at 563–64, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority." *Id*. at 564, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, see *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Bugh v. Mitchell,* 329 F.3d 469, 512–13 (6th Cir. 2003).

Claim three is without merit.

## Claim Four

In claim four, Petitioner asserts that the trial court improperly imposed the maximum term of eight years of incarceration; relied on false information in imposing sentence; unconstitutionally denied him the right to read or rebut false evidence contained within his bond

17

report; and denied him due process by re-sentencing him while his appeal remained pending in the Ohio Supreme Court. *Petition,* ECF 3, PageID# 41.  It is the position of the Respondent that Petitioner has procedurally defaulted this claim.

**Procedural Default**

      In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

      In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.... Second, the court must decide whether the state courts actually enforced the state procedural

> sanction.... Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin,* 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) a substantial reason to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.* "Cause" under this test "must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some factor external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id.* at 750.

Nevertheless, "'[i]n appropriate cases, the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isacc*, 456 U.S. 107, 135 (1982)). Petitioners who fail to show cause and prejudice for procedural default may nonetheless receive a review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir.2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 329 (1995).

Petitioner's claim is waived because he failed to raise it on direct appeal. His failure to raise claim four on direct appeal is a clear procedural default based on the rule in Ohio that errors which appear on the face of the record must be raised on direct appeal or will be deemed to have been forfeited. If petitioner were now to attempt to bring his claims by any other means, they

would be barred by Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981*); State v. Perry*, 10 Ohio St.2d 175.

The procedural rule barring petitioner's claims for relief constitutes adequate and independent state grounds for denying relief. The requirement that all available claims be asserted in the first appellate proceeding serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole; State v. Ishmail; State v. Perry.*

The Court concludes that petitioner has waived his right to present claim four for federal habeas corpus review. Petitioner can still secure review of this claim on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.

> "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). Constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451(2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)). However, petitioner has offered neither sufficient evidence of cause or prejudice to permit federal habeas corpus review. Petitioner cannot assert ineffective assistance of appellate counsel as cause for his failure to raise a claim regarding improper sentencing on direct appeal, as such claim has never been presented

to the state courts, and therefore is procedurally barred from review.  *Edwards v. Carpenter*, 529

U.S. at 451–52 (2000) (internal citation omitted).

Claim four is waived.

**Actual Innocence**

Petitioner also asserts that he is innocent of the crime with which he has been convicted.

The United States Supreme Court has held that a claim of actual innocence may be raised "to

avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional

claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a

constitutional violation has probably resulted in the conviction of one who is actually innocent, a

federal habeas court may grant the writ even in the absence of a showing of cause for the

procedural default." *Murray,* 477 U.S. at 496.  In *Schlup*, the Supreme Court held that a credible

showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise

procedurally-barred habeas petition.  *Schlup,* 513 U.S. at 317.  The actual innocence claim in

*Schlup* is "'not itself a constitutional claim, but instead a gateway through which a habeas

petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"

*Id*. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it

is "more likely than not" that new evidence-not previously presented at trial-would allow no

reasonable juror to find him guilty beyond a reasonable doubt.  *Souter v. Jones*, 395 F.3d 577

(6th Cir. 2005). The threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the

petitioner's] guilt to undermine confidence in the result of the trial."  *Schlup*, 513 U.S. at 317.

Actual innocence is restricted to factual innocence and does not encompass mere legal

insufficiency. *Souter* at 590 (citing *Bousley v. U.S.,* 523 U.S. 614, 623 Application of the actual innocence exception should be "rare" and "only in the extraordinary case." *Schlup* at 321.

Petitioner does not offer, and the Court's independent review of the Petition and record does not reveal that any "new facts" have arisen that undermine the result of his trial. Petitioner cannot, therefore, establish a claim for actual innocence sufficient to avoid his procedural default. Moreover, a free-standing claim of actual innocence does not provide a basis for relief. *See Legrone v. Birkett,* 571 F. A'ppx. 417, 421 (6th Cir. 2014)(citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)).

**Recommended Disposition**

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that the Petition be **DENIED** and this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report*

*and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, (1985); 638 F.2d 947 (6th Cir. 1981).

     The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

_s/ *Elizabeth A. Preston Deavers*___
Elizabeth A. Preston Deavers
United States Magistrate Judge
